**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| JORDAN ROSENBLATT, Individually and On Behalf of All Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) ) Case No. _____ |
| v. | ) ) ) JURY TRIAL DEMANDED ) |
| KEMET CORPORATION, FRANK G. BRANDENBERG, WILFRIED BACKES, GURMINDER S. BEDI, JACOB KOTZUBEI, WILLIAM LOWE, E. ERWIN MADDREY, II, YASUKO MATSUMOTO, ROBERT G. PAUL, and KAREN M. ROGGE, | ) CLASS ACTION ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This action stems from a proposed transaction announced on November 11, 2019 (the "Proposed Transaction"), pursuant to which KEMET Corporation ("KEMET" or the "Company") will be acquired by Yageo Corporation ("Parent") and Sky Merger Sub Inc. ("Merger Sub," and together with Parent, "Yageo").

2. On November 11, 2019, KEMET's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Yageo. Pursuant to the terms of the Merger Agreement, KEMET's stockholders will receive $27.20 in cash for each share of KEMET common stock they own.

3.       On December 26, 2019, defendants filed a proxy statement (the "Proxy Statement") with the United States Securities and Exchange Commission (the "SEC") in connection with the Proposed Transaction.

4.       The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5.       This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6.       This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.       Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8.       Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of KEMET common stock.

9.       Defendant KEMET is a Delaware corporation and maintains its principal executive offices at One East Broward Boulevard, Fort Lauderdale, Florida 33301. KEMET's common stock is traded on the New York Stock Exchange under the ticker symbol "KEM."

10. Defendant Frank G. Brandenberg is Chairman of the Board of the Company.

11. Defendant Wilfried Backes is a director of the Company.

12. Defendant Gurminder S. Bedi is a director of the Company.

13. Defendant Jacob Ktozubei is a director of the Company.

14. Defendant William Lowe is Chief Executive Officer and a director of the Company.

15. Defendant E. Erwin Maddrey, II is a director of the Company.

16. Defendant Yasuko Matsumoto is a director of the Company.

17. Defendant Robert G. Paul is a director of the Company.

18. Defendant Karen M. Rogge is a director of the Company.

19. The defendants identified in paragraphs 10 through 18 are collectively referred to herein as the "Individual Defendants."

## CLASS ACTION ALLEGATIONS

20. Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of KEMET (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

21. This action is properly maintainable as a class action.

22. The Class is so numerous that joinder of all members is impracticable. As of November 7, 2019, there were approximately 58,092,446 shares of KEMET common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

23. Questions of law and fact are common to the Class, including, among others, whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

24. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

25. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

26. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

*Background of the Company and the Proposed Transaction*

27. KEMET offers customers a broad selection of capacitor technologies in the industry, along with an expanding range of sensors, actuators, and electromagnetic compatibility solutions.

28. KEMET is a leading global supplier of high-end electronic components with a global footprint that includes twenty-three manufacturing facilities and approximately 14,000 employees located in twenty-two countries in the Americas, Asia, and Europe.

29. The Company's main products serve a number of applications, such as advanced automotive electronics, industrial applications, aerospace, medical, as well as smartphones,

cloud/networking equipment, wireless communications, alternative energy, and 5G technology.

30. Holding more than 1,600 patents and trademarks worldwide, KEMET has established a leading position for its products through its advanced R&D and technical staff and design-in capabilities.

31. On November 11, 2019, KEMET's Board caused the Company to enter into the Merger Agreement with Yageo.

32. Pursuant to the terms of the Merger Agreement, KEMET's stockholders will receive $27.20 in cash for each share of KEMET common stock they own.

33. According to the press release announcing the Proposed Transaction:

Yageo Corporation (TAIEX: 2327) ("Yageo") and KEMET Corporation ("KEMET") (NYSE: KEM) today announced that they have entered into a definitive agreement under which Yageo will acquire all of the outstanding shares of KEMET's common stock for US$27.20 per share in an all-cash transaction valued at US $1.8 billion, including the assumption of net debt. The transaction has been approved by the Boards of Directors of both companies. . . .

Financing, Timing and Approvals

The transaction is not subject to a financing contingency. Yageo intends to fund the transaction with a combination of cash on hand and committed financing.

The transaction, which is expected to close in the second half of 2020, is subject to customary closing conditions and the receipt of required regulatory approvals.

Following close of the transaction, KEMET will become a wholly owned subsidiary of Yageo and KEMET's common stock will no longer be listed on any public market.

Advisors

Citi is serving as financial advisor to Yageo, and Simpson Thacher & Bartlett LLP and Tsar & Tsai Law Firm in Taiwan served as legal advisors. Goldman Sachs & Co. LLC is serving as financial advisor to KEMET and Skadden, Arps, Slate, Meagher & Flom LLP is serving as legal advisor.

*The Proxy Statement Omits Material Information, Rendering It False and Misleading*

34. Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction.

35. As set forth below, the Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.

36. First, the Proxy Statement omits material information regarding the Company's financial projections.

37. The Proxy Statement fails to disclose, for each set of projections: (i) all line items used to calculate (a) Adjusted EBIT, (b) Adjusted EBITDA, (c) Adjusted EBITDA Margin, (d) Adjusted EPS, and (e) free cash flow; and (ii) a reconciliation of all non-GAAP to GAAP metrics.

38. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

39. Second, the Proxy Statement omits material information regarding the analyses performed by the Company's financial advisor in connection with the Proposed Transaction, Goldman Sachs & Co. LLC ("Goldman").

40. With respect to Goldman's Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) the individual inputs and assumptions underlying the discount rates ranging from 11.0% to 13.0%; (ii) the estimates of unlevered free cash flow for KEMET for fiscal years 2020 through 2027 and all underlying line items; (iii) the terminal values for KEMET; (iv) Goldman's basis for applying exit terminal year enterprise value to EBITDA multiples ranging from 3.5 times to 5.5 times; and (v) the fully diluted outstanding shares of KEMET.

41. With respect to Goldman's Illustrative Present Value of Future Stock Price Analysis, the Proxy Statement fails to disclose: (i) Goldman's basis for applying a range of enterprise value to forward EBITDA multiples of 4.0 times to 6.0 times and a range of price to forward earnings multiples of 6.0 times to 12.0 times; (ii) the fully diluted outstanding shares of KEMET; (iii) the individual inputs and assumptions underlying the discount rate of 12.1%; and (iv) the projected cumulative dividends per share used by Goldman in the analysis.

42. With respect to Goldman's Premia Analysis, the Proxy Statement fails to disclose: (i) the transactions observed by Goldman in the analysis; and (ii) the premiums paid in the transactions.

43. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

44. Third, the Proxy Statement fails to disclose whether the Company entered into any nondisclosure agreements that contained "don't ask, don't waive" provisions that are or were preventing the counterparties from requesting waivers of standstill provisions to submit offers to acquire the Company.

45. Without this information, stockholders may have the mistaken belief that, if these potentially interested parties wished to come forward with a superior offer, they are or were permitted to do so, when in fact they are or were contractually prohibited from doing so.

46. The omission of the above-referenced material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) Background of the Merger; (ii) Recommendation of the Board and Reasons for the Merger; (iii) Opinion of KEMET's Financial Advisor; and (iv) Projections Prepared by KEMET's

Management.

47. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

### Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and KEMET

48. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

49. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. KEMET is liable as the issuer of these statements.

50. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

51. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

52. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

53. The Proxy Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

54. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

55. Because of the false and misleading statements in the Proxy Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants

56. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

57. The Individual Defendants acted as controlling persons of KEMET within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of KEMET and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

58. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

59. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved

in the making of the Proxy Statement.

60. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

61. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: January 7, 2020  **RIGRODSKY & LONG, P.A.**

By: */s/ Gina M. Serra*
Brian D. Long (#4347)
**OF COUNSEL:** Gina M. Serra (#5387)
300 Delaware Avenue, Suite 1220
**RM LAW, P.C.** Wilmington, DE 19801
Richard A. Maniskas Telephone: (302) 295-5310
1055 Westlakes Drive, Suite 300 Facsimile: (302) 654-7530
Berwyn, PA 19312 Email: bdl@rl-legal.com
Telephone: (484) 324-6800 Email: gms@rl-legal.com
Facsimile: (484) 631-1305
Email: rm@maniskas.com *Attorneys for Plaintiff*

11